Court. My name is Diane Kutsko and I represent William Miller in this appeal that arises from Mr. Miller's Chapter 11 bankruptcy. The question for the Court today is whether or not post-petition, whether Mr. Miller's confirmed plan in fact discharged post-petition pre-confirmation interest, what's commonly known as gap-period interest on the Internal Revenue Service's secured claim. Our basic choice, it seems to me, is between the Victor approach and the Gust approach, correct? With regard to statutory ground, the answer is yes, either Victor, and we certainly would state that Victor is the better-reasoned decision, gives plain meaning to the applicable provisions which are 1141, 523A1A, and 507A8, because 507A8 specifically talks in terms of unsecured claims, and therefore, the secured claims here would not be discharged by the plain language of 1141D2 and 523A. But we have a separate and independent ground, which is the also in the event that this Court declines to follow Victor, the separate and independent ground, the plain language of the clear language of the plan evidenced Mr. Miller's intent to discharge all post-petition interest as provided in the first paragraph of the discharge provision in Article 11. It's Article 11 of the plan. There are also sound and compelling equitable reasons to find that, period, equitable reasons. Certainly there is no fresh start doctrine applicable to the debtor with regard to tax debts. On the other hand, this Court and the Supreme Court has held that exceptions to discharge even for taxes, the exceptions for discharge contained in Section 523 should be narrowly discharged. And here the equities are particularly compelling. Mr. Miller, the IRS got 100 cents on the dollar in this particular case. Mr. Miller made available to the IRS assets in the estate that would ordinarily have not been available in the estate, three very substantial trusts with real property in them amounting to about $1.1 million, as well as substantial cash for an initial down payment. Now, the IRS in this case talks before this Court only about its secured claim in the amount of $269,000, but in reality it also had approximately $500,000 and some odd secured claim. By Mr. Miller making those assets available to the estate for purposes of satisfying the IRS's debt, he functionally made the entire IRS claim, the tax for unsecured ‑‑ excuse me, for gap period interest both on the secured and the unsecured claim secured. In addition, the IRS waited five years to make any kind of claim after it agreed in the plan to release all liens. After the last payment was made on every penny that was owed the IRS, the IRS refused to release the liens as it had agreed to do in the plan itself. Returning to the legal ground of ‑‑ with regard to the statutes, reading 1141, 523A1A and 507AA together, the plain meaning of those provisions is that the only exceptions to unsecured tax debts, not the secured claims at issue here. And that's particularly true if you focus on 523A1A, which accepts from discharge debts for taxes of a kind as described in 507AA, whether or not filed or allowed. What the IRS would have this court do is simply focus on the language, tax of a kind, as opposed to the operative important language, which is debt. Debt is defined in section 101 of the Bankruptcy Code as a liability on a claim. Therefore, the plain meaning of 523A1A is not that taxes described in 507AA are discharged, but debts, because debts are ‑‑ because debt is defined as liability on a claim. If you go to 507AA, it talks about a subset of those debts, unsecured allowed claims. And therefore, the plain meaning would require this court to find that the only exception to discharge for gap period interest, as well as for the underlying tax debt, would be for those that are unsecured as opposed to secured, which is the claim here in this case. In addition, this makes sound policy sense. The IRS says that it would be disadvantaged by the interpretation in Victor. It would be put in a worse position, but it would not be. The only absurd result that the IRS can point to in this case is that it would be required to file a proof of claim in all cases, including no asset Chapter 7s. That's simply not the case. If the court looks at Section 506 rather than 507, 506 governs the rights of secured creditors. Under 506, a lien ‑‑ 506D, the lien would survive a no asset bankruptcy case, and the IRS would be free to pursue the collateral. Because the significant thing about the IRS's secured claim is that it is secured by collateral. In this case, 100 percent on the dollar. In fact, more than 100 percent on the dollar. It was oversecured in this case because, as shown by Mr. Miller's disclosure statement, that there were more assets, substantially more assets, than what the total amount of the claims were, thus making this oversecured. Under 506, what the IRS had a responsibility to do was to make a claim in the estate, in the bankruptcy estate, for that gap period interest. In fact, the IRS's own proof of claim talked about, under the secured claim, stated that gap period interest or postpetition interest could, in fact, be sought pursuant to 506, which is from the estate, not the debtor. Therefore, pursuant to its own proof of claim, the IRS recognized that it had to or was required to make a claim for that ‑‑ for that secured interest, for the interest on the secured claim from the estate. It didn't do it. It failed to object. And therefore, the interest, the gap period interest, was pursuant to Victor, and a plain-meaning reading of the statutes applicable was discharged. In the alternative, if the Court declines to follow Victor, then looking at the plan language itself, the plan itself discharges ‑‑ shows the intent to discharge the gap period interest. You're referring to Article 11? Yes, I am, Your Honor. It would appear that Article 11 could be read either way. It doesn't specifically mention the gap period interest. It's very general. It could be read your way. What level of specificity is required in order to discharge any obligation related to tax or interest on tax? Well, the plan, from a plan analysis, the plan is a contract. And the question is, is what did the contract provide? Because under 1141, the IRS, as a creditor, would have been bound by the confirmed plan. Paragraph 1 of the confirmed plan specifically talks about interest that accrued discharge, provides for discharge of interest that accrued post-petition. And that can only mean gap period interest. Both the bankruptcy court and the district court conceded, essentially, that that was a plausible reading, and, in fact, that's what Paragraph 1 of Article 11 meant. Paragraph 2 of Article 11 talks about deaths that would be conclusively deemed released and discharged as provided in 11 U.S.C. 524 and 1141. So Paragraph 2, where both courts believe that an ambiguity was created, in fact, does not create an ambiguity because it refers to the entirety of Section 1141, and it also refers to 524. 1141, except for D2, is the general provision with regard to discharge. Section 524 is the injunctive provision with regard to discharge, which means that a confirmed plan acts as a permanent injunction on any creditor coming back for the collection, for the recovery of debts that arose pre-confirmation. And if you go back to Paragraph 1, specifically, that paragraph can only be read to mean the post-petition interest here, because it talks about interest that accrued post-petition. So, therefore, reading both paragraphs together, the meaning of the contractual language here means that, in fact, that the post-petition interest on the secured claim was conclusively discharged pursuant to those two provisions. Returning again to the issue of our two separate legal grounds here, I think that this Court can either decide, can follow, Victor, and under plain meaning, under the plain meaning of the provisions, it ought to. And if not separately and independently, it should look to the contract to the confirmed plan for the intent to discharge the interest. But even if it goes to the plan first, it has to come back to the Victor v. Gust argument for the following reason. The only reason that there would be an ambiguity in Paragraph 2 of the plan would be if, in fact, 1141, which refers to, which in turn refers to 523 and then to 507-A8, the only way that there would be an ambiguity is if, in fact, 507-A8 had been discharged.    be if, in fact, 507-A8 refers to both unsecured as well as secured. Otherwise, if it applies only to unsecured, there is no ambiguity here, because what the court, excuse me, what the IRS is seeking to recover is interest on the secured claim. For those reasons, the court should reverse, and I'd like to reserve the remainder of my time. Thank you. Sotomayor, you may do so. May it please the Court, the Bankruptcy Court and the district court, correctly held that Section 523 requires the discharge of all taxes of the kind listed in Section 507, not merely allowed unsecured claims of the kind listed in Section 507? As I understand it, taxpayers' argument and, by extension, the reasoning of the Court in Victor confused the principles of discharge and priority. Those two concepts serve different purposes. Discharge or non-dischargeability is a question of what debts survive bankruptcy, what can a creditor do after bankruptcy is over to recover his debts? Priority is with regard to claims within bankruptcy against the bankruptcy estate, the order in which those claims are paid. Now, Congress carved out a series of kinds of taxes that it wanted to give both non-dischargeability to those kinds of debts and priority status to claims for those debts in bankruptcy, and it accomplished that through the statutory scheme in the following way. Section 523 states that a discharge under 1141 does not discharge an individual debtor from any debt for a tax of the kind specified in Section 507a8, whether or not a claim for such tax was filed or allowed. And then Section 507a8, which speaks to priority, says that priority is given to allowed unsecured claims to the extent the claims are for a tax required to be collected or withheld. And, of course, 507 refers to allowed unsecured claims, because even though for dischargeability you do not need to file a claim in bankruptcy, it's just a question of what debt survives later. In bankruptcy, to be able to recover from the bankruptcy estate, you need to file a claim, you need that claim to be allowed, and the further specification of unsecured simply recognizes the fact that secured claims are paid separately before you get to the question of priority of unsecured claims. So there's no contradiction in the statute whatsoever. Section 523 says you refer to Section 507 for taxes of the kind. And it very explicitly says there does not need to be a claim. We're just looking for the kinds of taxes that are mentioned in Section 507. Does it make any difference that in actually filing a proof of claim, the IRS said that it was going to follow certain procedures? Opposing counsel says it's important what the IRS said in its proof of claim, and it's limited to going through the procedures stated there. What's your response to that? You're referring to the statement that post-sufficient interest may be recovered? Right. I think we fall back to the principle of the IRS may file a claim but is not required to. But once it does, what effect does that have? Is it bound by what it says it's going to do or not going to do? I would distinguish two types of cases. One would be a case where we said this is the amount of our claim, and that's just simply this is what we're seeking to recover from the bankruptcy estate, and that's all that means. Dischargeability is a totally separate issue. If we imagined a hypothetical case, which is not this case, that the IRS came and said, here is your total debt. Scouts honor. We're not going to recalculate this. Absolutely, we know that your debt is $100,000, and that's all that there is. Then I could see the possibility of an estoppel applying. However, in this case, there's no question of any estoppel. As you may recall, the bankruptcy court held a trial. At the conclusion of the trial, found that the IRS was not estopped. In fact, very clearly put the debtor on notice that postpetition interest was payable and that they needed to be thinking about that up front, which debtors prior to counsel ended up ignoring that advice. The bankruptcy court found there was no estoppel. The debtors have not challenged that factual finding. In fact, they have not even put the trial transcript into the record. So that factual issue just simply isn't before the court. What is your response to their argument concerning the effect of Article 11 of the plan? Okay. With regard to the plan, there are two paragraphs in the plan. One says that except as otherwise provided, all debts are discharged. And then the second paragraph states that all debts are discharged as provided in Sections 524 and 1141. Now, 1141, of course, specifically within its own contour says that there can be no discharge of a debt excepted from discharge under 523. So in my view, the most natural reading of the plan language is that the parties intended a discharge as broad as, but no broader than, that allowed under 523. At the very minimum, the language is at least reasonably susceptible to that reading. And under California law, that's the standard. It's a very broad standard for parole evidence under California law as opposed to some other States. As long as the plan language is at least reasonably susceptible to that construction, then you're allowed to take in parole evidence and resolve the ambiguity on the basis of extrinsic evidence. And, of course, again, they don't challenge the factual findings of the bankruptcy court in resolving the ambiguity through the parole evidence. Their only argument is just the threshold that it was not at least reasonably susceptible. And for the reasons I just said, it's at least a plausible reading, if not the unambiguous reading, that the parties did not intend a discharge broader than that allowed under 1141 and 523. Furthermore, assuming, for the sake of argument, that the plan did, in effect, provide for a discharge, and as I just said, we dispute that, I just wanted to refer the Court to our alternative argument that the plan could not discharge. Section 1141 specifies the res judicata effect of a confirmed plan under Chapter 11. And, again, as I mentioned, Section 1141 specifically carves out that's accepted from discharge under Section 523 from that res judicata effect. And there's case law from the Tenth, Eleventh, and Fifth Circuits, and this Court's not applying that clear language in Section 1141 saying that a creditor cannot be bound by that language in the plan. This Court the debtors have referred to the Part E case in this Court, but that was a Chapter 13 case. It does not apply in this issue, which is a Chapter 11 case. The operative statutes, excuse me, Section 1141 for Chapter 11, Section 1327 for Chapter 13 have different language. Section 1327 just flatly says the plan is binding. Section 1141 has the carve out from the res judicata effect. Going back to the question of whether Victor or Gust have the right reading of Section 523, I just want to refer briefly to something that the poet has mentioned at argument, the question of whether debt means the same thing as claim. And first I would note that this is an argument that was new in their reply brief, not raised below, not raised in their opening brief, so therefore waived. But in any event, it's meritless. Sotomayor Well, they have raised the question of how to read the statute. I mean, I don't think that the variance of that are foreclosed as they're working their way through the text and context of the statute. I would just simply note that the specific argument of the definition of debt was not raised until reply, so I haven't had a chance to brief it until now. But I will at this point in argument lay out why it's an erroneous reading. 11 U.S.C. 10112 defines debt as liability on a claim. 11 U.S.C. 10115 defines claim as a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, et cetera, et cetera, et cetera. Relevant Supreme Court case law, such as the FCC v. Next Wave personal communications case cited by felons in their reply brief, thus defines debt as any right to payment and, therefore, any enforceable obligation. So a claim is any enforceable obligation. And that's why Section 507 doesn't just refer to claims. It means it refers to allowed, unsecured claims, because you have to have a claim be allowed, filed, allowed, and unsecured because security is treated separately for Section 507 priority status to kick in. So with that reading, you look at Section 523. It says what is accepted from discharge is any enforceable obligation for a tax of the kind specified in Section 507. And just in the mere fact that you refer to claims, it's fine. Section 101 does not change that reading. And with that, I believe I've covered all the points that I hope to cover. I'd invite any further questions. Judge Hall, do you have any further questions? No questions. Okay. You have a bit of rebuttal time remaining if you'd like to use it. Just very briefly, again, with regard to the Victor argument, the IRS and the court in Gust would have you read out of 523A1A debt. I mean, they would have you focus immediately on tax and then tax of a kind and then go from tax of a kind in 523A1A to the taxes described in the enumerated provisions of 507A8. It simply does violence to the plain meaning of the provision. It reads out the important term unsecured. The code is premised on according certain rights to those who are secured and certain to those who have priority unsecured claims. And the priority unsecured claims in 507A8, the protections afforded priority unsecured claimant are different from those that are accorded to a secured creditor like the IRS here. And the IRS would have it both ways. Also, it ignores the fact that claim is, in fact, coextensive with debt. And so to the extent that you've got a mention of debt in 523A1A, 1141 and 523A1A talk about debts and discharge of debts. Debt and claim is coextensive, so it seems illogical and does violence to the language to read out and skip over the important language applied unsecured. Thank you, Your Honor. Thank you, counsel. The case just argued is submitted. We appreciate the arguments of both parties. And we will take a five-minute recess. Court is adjourned.
judges: Hall, Tg Nelson, Graber